**ARTHUR J. ABRAMOWITZ (AA3724)**
**JERROLD N. POSLUSNY, JR. (JP7140)**
**COZEN O'CONNOR**
A Pennsylvania Professional Corporation
LibertyView, Suite 300
457 Haddonfield Road
Cherry Hill, NJ 08002
(856) 910-5000

Proposed Attorneys for the Debtor

| | |
|---|---|
| In re: | UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY |
| HAAS ENVIRONMENTAL, INC., | CHAPTER 11 |
| Debtor. | CASE NO. 13- |

### CERTIFICATION OF EUGENE HAAS IN
### SUPPORT OF DEBTOR'S FIRST DAY MOTIONS

Eugene Haas, being duly sworn, hereby declares and certifies under penalty of perjury:

1. I am the President of Haas Environmental, Inc. (the "Debtor"), and am authorized to make this certification (the "Certification") in support of the "first-day" motions and applications (the "Motions") on its behalf.

2. On this date (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey.

3. The Debtor is operating its business and managing its property as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

4. No trustee or examiner has been appointed in this case. No official committee of unsecured creditors has been appointed in this case.

5.  I am advised by counsel that this Court has jurisdiction over this Chapter 11 case pursuant to 28 U.S.C. §§ 157 and 1334 and that venue is proper in the United States Bankruptcy Court for the District of New Jersey pursuant to 28 U.S.C. §§ 1408 and 1409.

A. <u>Description of the Debtor and its Business</u>

6.  The Debtor's business was established in 1996 and is headquartered in Vincentown, New Jersey with six divisions located near many major cities in the eastern half of the United States.

7.  The Debtor provides industrial cleaning and environmental remediation services for steel mills, production plants, emergency spill response and various other facilities. In addition, the Debtor assists municipalities in clean-ups following natural disasters. For example, the Debtor was hired by the City of New Orleans immediately following the devastation of Hurricane Katrina and is recognized as a disaster relief vendor.

8.  In 2010, the Debtor expanded to the oil and gas industry in the Marcellus Shale region. The Debtor was hired by major oil and gas companies in the region to haul fresh water for the hydraulic fracturing process, the cleaning of frack tanks and lagoon cleanouts.

9.  By 2011, over 55% of the Debtor's business was related to the Oil and Gas Industry in the Marcellus Shale region, totaling approximately $16 million of the Debtor's revenue. To service that growth, and expecting such growth to continue for the foreseeable future, the Debtor purchased a significant amount of new equipment, which purchases were financed. In addition, the Debtor made significant commitments for office and garage space in Western Pennsylvania and West Virginia.

10. By the second half of 2012 the gas and oil industry had almost come to a halt. The Debtor's revenues from oil and gas industry work dropped to $12 million in 2012. The Debtor projects that its 2013 oil and gas revenue will be less than $6 million.

2

11. The reason for the decrease is revenue is related to the sharp decline of the price of natural gas, which fell from a high of $5 per cubic meter to under $2 per cubic meter between 2011 and early 2013. The oil and gas producers determined there was little value in drilling unless the price for natural gas was at least $4 per cubic meter. As of the Petition Date, the price of natural gas is $3.32 per cubic meter. The gas and oil industry is making a slow but steady rebound in Pennsylvania, West Virginia and the Ohio Region. Unfortunately, the rebound has not progressed quickly enough for the Debtor to avoid the necessity of filing the this Chapter 11 case.

12. The Debtor believes that it will be able to sell certain non-essential assets to third parties to reduce its obligations to secured creditors and to ultimately fund a plan of reorganization that focuses on the Debtor's core business and is much less dependent on the natural gas industry.

B. The Debtor's Secured Creditors

13. Although the Debtor has not completed a review of its UCC filings, it presently believes that the following parties have liens against certain of the Debtor's assets:[1]

   a. The Debtor believes that Peoples United Equipment Finance Corp. ("Peoples") holds a first position lien against, inter alia, the Debtor's accounts, and several of the Debtor's pieces of equipment and vehicles. The Debtor believes that the present balance owed to Peoples is approximately $3,214,000.

   b. The Debtor believes that Commercial Credit Group ("Commercial Credit") holds a second position lien against, inter alia, the Debtor's accounts, and a first lien

---

[1] The Debtor has not yet completed its review of UCC filings, recorded mortgages, or judgments. As such, the Debtor reserves the right to contest any asserted liens if the Debtor determines, in its ongoing investigation, that there is any basis to contest such lien, including but not limited to, that the party asserting a lien was not properly perfected on the Petition Date.

3

position against several of the Debtor's pieces of equipment and vehicles. The Debtor believes that the present balance owed to Commercial Credit is approximately $2,480,000.

c. The Debtor believes that Sovereign Bank ("Sovereign") holds a third position lien against, inter alia, the Debtor's accounts. The Debtor believes that the present balance owed to Sovereign is approximately $784,000.

14. As of the Petition Date, the Debtor's accounts receivable total approximately $1,220,000, which amount the Debtor expects will increase between the Petition Date and the end of 2013.

15. The Debtor believes that other entities hold liens against other of the Debtor's vehicles and pieces of equipment.

## C. The First Day Papers

16. As a result of my first-hand experience, and through my review of various materials and information, discussions with employees of the Debtor, and discussions with the Debtor's outside advisors, I have formed opinions as to (a) the necessity of obtaining the relief sought by the Debtor in its "first-day" Motion listed on Exhibit A; (b) the need for the Debtor to continue to manage its assets effectively; and (c) the deleterious effects upon the Debtor of not obtaining such relief.

17. I submit this Declaration in support of the Motions filed (or to be filed) with the Court in connection with the commencement of this case and listed on Exhibit A.

18. I have reviewed each of the Motions (including the exhibits and schedules attached thereto) and, to the best of my knowledge, I believe that the facts set forth therein are true and correct. Such representation is based upon information and belief and through my review of various materials and information, as well as my experience and knowledge of the

17017939\3

Debtor's operations and financial condition. If I were called upon to testify, I could and would, based on the foregoing, testify competently to the facts set forth in each of the Motions.

19. The relief sought in the Motions will minimize the adverse effects of the instant Chapter 11 case on the Debtor and result in maximum creditor recoveries. I believe that the relief sought in each of the Motions is necessary to enable the Debtor to ensure a smooth transition into Chapter 11 and operate effectively in Chapter 11 as a debtor in possession.

20. Accordingly, for the reasons stated herein and in each of the Motions filed concurrently or in connection with the commencement of this case, I respectfully request that each of the Motions be granted in its entirety, together with such other and further relief as this Court deems just and proper.

21. I certify under penalty of perjury that, based upon my knowledge, information and belief as set forth in this Declaration, the foregoing is true and correct.

_____<br>Eugene Haas, President

Dated: August 6, 2013

# EXHIBIT A

DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS A) AUTHORIZING DEBTOR TO (I) USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND (II) PROVIDE ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363 AND (B) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001

DEBTOR'S VERIFIED MOTION FOR AN ORDER AUTHORIZING BUT NOT DIRECTING PAYMENT OF PRE-PETITION WAGES, SALARIES, COMPENSATION, EMPLOYEE BENEFITS, BUSINESS REIMBURSEMENT EXPENSES, AND THE CONTINUATION OF THE DEBTOR'S WORKERS' COMPENSATION PROGRAM AND POLICIES PURSUANT TO 11 U.S.C. §§ 105(a), 507(a)(4) AND (5).

MOTION OF THE DEBTOR FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO SECTIONS 105(a) AND 366 OF THE BANKRUPTCY CODE (I) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING OR DISCONTINUING SERVICES TO, OR DISCRIMINATING AGAINST, THE DEBTOR ON ACCOUNT OF PREPETITION AMOUNTS DUE; (II) DEEMING UTILITY PROVIDERS ADEQUATELY ASSURED OF FUTURE PERFORMANCE; (III) AUTHORIZING THE DEBTOR TO ESTABLISH THE ADEQUATE ASSURANCE DEPOSIT ACCOUNT AND PAY THE ADEQUATE ASSURANCE DEPOSIT; (IV) ESTABLISHING PROCEDURES FOR OBJECTION TO THE ADEQUATE ASSURANCE PROCEDURES; AND (V) GRANTING CERTAIN RELATED RELIEF.

VERIFIED MOTION FOR AN ORDER AUTHORIZING THE DEBTOR TO MAINTAIN CURRENT BANK ACCOUNTS, MAINTAIN ITS PRE-PETITION CASH MANAGEMENT SYSTEM, AND USE EXISTING BUSINESS FORMS.